IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

WILLIE GRIFFIN, II, DOROTHY
GRIFFIN and WILLIE GRIFFIN, III                                             PLAINTIFFS

VS.                               CASE NO. 07-CV-1015

CROSSETT SCHOOL DISTRICT, INC.;
JANICE WARREN, SUPERINTENDENT,
In Her Official Capacity of Superintendent
of the Crossett School District; JIM LUCAS,
In His Official Capacity as Principal of
Norman Junior High School; BOARD
MEMBERS, ROBERT CORNELIUS, BILL
RUNYAN, BRUCE WARREN, DOUG
THURMAN, AND ROBERT STONE, in
Their Official Capacities as Board Members
of the Crossett School District                                             DEFENDANTS

## MEMORANDUM OPINION

Before the Court is the Defendants' Motion for Summary Judgement. (Doc. No. 11). The Plaintiffs have responded. (Doc. No. 16). The Defendants have filed a reply to Plaintiffs' response. (Doc. No. 19). The matter is ripe for consideration.

### BACKGROUND

In the fall of 2005, Willie Griffin III ("Willie"), a fourteen year old African American boy, was enrolled in the ninth grade at Norman Junior High School in the Crossett School District. He was a special needs student under Section 504 of the Rehabilitation Act of 1973. In September of that school year, Willie brought a .45 caliber pistol to school and gave it to another student, Devario Paskel. The school was informed of the incident by Willie's father, Willie Griffin II.

After learning of the incident, Steve Garrison, principal of Norman Junior High School, recommended to Janice Warren, the school district's superintendent, that Willie be expelled in accordance with the district's zero tolerance policy regarding weapons at school.[1]  Before Ms. Warren took the recommendation to the school board, she scheduled a Section 504 Evaluation and Manifestation Determination Conference in accordance with federal law.  The purpose of the evaluation and manifestation conference was to determine if Willie's behavior was the result of or affected by his disability.  The 504 committee consisted of the principal, the Section 504 coordinator, two teachers and two counselors from Norman Junior High where Willie attended school.   Willie's mother, Dorothy Griffin, also attended the meeting.  The committee met and found that Willie's disability (ADHD-inattentive type) did not impair his ability to understand the impact and consequences of his behavior.  The committee concluded that Willie's disability had no bearing on his behavior in regard to this incident.  As a result, the school district could discipline Willie in accordance with its weapon policy – as it would any non-disabled student.

Thereafter, in light of the committee's findings, Ms. Warren recommended to the school board that Willie be expelled for the rest of the school year.  The board followed Ms. Warren's recommendation and expelled Willie for the remained of the 2005-2006 school year.[2]

---

[1] The school district's zero tolerance policy regarding weapons stated: "A student shall not possess, handle, or transmit any object that might reasonably be considered a weapon or dangerous instrument, including, but not limited to the following:  knife (blade 3½ inches or more), razor/razor blade, ice pick, explosive, pistol, rifle, shotgun, pellet gun, or any other object capable of causing serious physical injury.  Students violating this rule shall be recommended for expulsion and shall be subject to prosecution under applicable laws."

[2] Devario Paskel, the student to whom Willie gave the pistol, was also expelled from school for the remainder of the 2005-2006 school year.

During the same school year, Jacob Stockstill, a nine year old Caucasian boy, was enrolled in the fifth grade at Daniel Intermediate School in the Crossett School District. Jacob was also a special needs student under Section 504. In March 2006, Jacob was found to be in possession of a weapon at school. Jeff Senn, the school's principal, recommended to Ms. Warren that Jacob be expelled in accordance with the district's zero tolerance policy regarding weapons. Again, before Ms. Warren took the recommendation to the school board, she scheduled a Section 504 Evaluation and Manifestation Determination Conference as required by federal law. The purpose of the conference was to determine if Jacob's behavior was the result of or affected by his disability. The 504 committee consisted of the principal and three teachers from Daniel Intermediate School where Jacob went to school. Jacob's parents also attended the meeting. The 504 committee met and found that Jacob's disability (ADHD) did impair his ability to understand the impact and consequences of his behavior.[3] The committee concluded that Jacob's behavior was a manifestation of his disability. As a result of this finding, Jacob could not be disciplined in accordance with the school district's weapon policy. He could not be expelled or placed in the district's DAEP beyond ten (10) school days.

Ms. Warren accepted the 504 committee's findings. Therefore, the issue of Jacob's expulsion was never taken to the school board and he was not expelled from school. Rather, Jacob served the remainder of his ten (10) day suspension, received counseling and returned to school.

---

[3] The committee also found that what appeared to be a weapon in this case was really a toy gun. Upon inquiry by Ms. Warren, this fact was confirmed by Mr. Senn, the school's principal, and Officer Bortell, the school's resource officer. Mr. Senn and Officer Bortell also reported that the plastic toy gun was broken when it was taken away from Jacob.

On February 27, 2007, Willie Griffin II, Dorothy Griffin and Willie Griffin III filed suit against the Crossett School District, Superintendent Janice Warren, Principal Jim Lucas[4], and School Board Members Robert Cornelius, Bill Runyan, Bruce Warren, Doug Thurman and Robert Stone. In their Complaint, the Plaintiffs allege that the Defendants discriminated against Willie Griffin III because of his race in violation of Title VI of the Civil Rights Act, 42 U.S.C. §2000d, 42 U.S.C. § 1981 and the Fourteenth Amendment of the United States Constitution. The matter is now before the Court on Defendants' Motion for Summary Judgment.

## STANDARD OF REVIEW

The standard of review for summary judgment is well established. The Federal Rules of Civil Procedure provide that when a party moves for summary judgment;

> The judgment sought shall be rendered forthwith if the pleadings, dispositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c); *Krenik v. County of LeSueur,* 47 F.3d 953 (8th Cir. 1995). The Supreme Court has issued the following guidelines for trial courts to determine whether this standard has been satisfied:

> The inquiry performed is the threshold inquiry of determining whether there is a need for trial–whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.,* 447 U.S. 242, 250 (1986). *See also Agristor Leasing v. Farrow,* 826 F.2d 732 (8th Cir. 1987); *Niagara of Wisconsin Paper Corp. v. Paper Indus. Union-*

---

[4] The Plaintiffs have conceded that Defendant Jim Lucas was sued in error. Therefore, Plaintiffs' claims against Mr. Lucas will be dismissed.

*Management Pension Fund,* 800 F.2d 742, 746 (8th Cir. 1986). A fact is material only when its resolution affects the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 248. A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Id.* at 252.

The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enterprise Bank v. Magna Bank,* 92 F.3d 743, 747 (8th Cir. 1996). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id.* The nonmoving party must then demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. County of LeSueur,* 47 F.3d at 957. A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 256.

DISCUSSION

*Plaintiffs' Title VI Claim*

The Plaintiffs allege that Defendants discriminated against Willie because of his race when he was expelled from school for violating the school district's weapon policy while a Caucasian student was only suspended for violating the same policy. They claim that this disparate treatment was in violation of Title VI, 42 U.S.C. §2000d.[5]

---

[5] Title 42 U.S.C. §2000d provides, in pertinent part, that "[n]o person in the United States shall, on the ground of race, color or national origin, be excluded from participation in, be denied the benefits of, or subjected to discrimination under any program or activity receiving Federal financial assistance."

To determine if a plaintiff can withstand summary judgment in a Title VI case, courts often apply the Title VII burden-shifting framework set forth in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). *Bryant v. Indep. Sch. Dist., No. I-38 of Carvin County, OK,* 334 F.3d 928, 929-30 (10th Cir. 2003)(citing *Guardians Ass'n v. Civil Serv. Comm'n of New York,* 463 U.S. 582, 103 S.Ct. 3221, 77 L.Ed.2d 866 (1983)). Therefore, the plaintiff must first prove by a preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the alleged discriminatory conduct. Third, should the defendant carry this burden, the plaintiff must show that the legitimate reason offered by the defendant was not its true reason, but was merely a pretext for discrimination. The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff. *Bryant,* 334 F.3d at 930 (quoting *Burdine,* 450 U.S. at 252-53, 101 S.Ct. 1089).

To establish the elements of a prima facie case under Title VI, the plaintiff must demonstrate that his race, color, or national origin was the motive for the discriminatory conduct. *Thompson By and Through Buckhanon v. Board of Special School Dist. No. 1, (Minneapolis),* 144 F.3d 574, 581 (8th Cir. 1998)(citing *Brantley v. Independent Sch. Dist. 625,* 936 F.Supp. 649, 657 n.16 (D.Minn. 1996)). To accomplish this in a disparate treatment case, the plaintiff must show that 1) he is a member of a protected class; 2) that he was disciplined; and 3) that similarly situated comparators were treated differently for the same or similar conduct. *Buhendwa v. University of Colorado at Boulder,* 214 Fed.Appx. 823, 827 (10th Cir. 2007) (internal citations omitted). In this case, the Plaintiffs contend that Willie was treated differently than a similarly

situated Caucasian student, Jacob Stockstill, for the same conduct–bringing a weapon to school. However, the evidence before the Court shows that Willie and Jacob were not similarly situated to each other.

Both Willie and Jacob were special needs students under Section 504 of the Rehabilitation Act of 1973.  Therefore, the school district was required to conduct a Section 504 Evaluation and Manifestation Determination Conference before either boy could be disciplined. *See* 20 U.S.C. §1415(k)(4).  The purpose of the conference was to determine whether the conduct for which each boy was being disciplined, i.e., bringing a weapon to school, was the result of or affected by his disability.  If it was determined that the behavior was not a manifestation of his disability, the school district could discipline the student as it would any non-disabled child.  *See* 20 U.S.C. §1415(k)(5).  If, however, it was determined that the behavior was connected to the student's disability, the discipline had to comply with IDEA (Individuals with Disabilities Education Act) rules and regulations.  *See* 20 U.S.C. §1415(k)(1)-(2).  Therefore, the discipline to which each of these students could be subjected were limited by the decision of their respective 504 committees.

In this case, both Willie and Jacob had Section 504 Evaluation and Manifestation Determination Conferences.  However, their respective committees made different determinations in regard to the effect each boy's disability had on his behavior.  Jacob's 504 committee determined that his disability impaired his ability to understand the impact and consequence of his bringing a gun to school.  This determination barred the school district from taking disciplinary action against him.  Therefore, Jacob could not be expelled in accordance with the school district's weapon policy.  Willie's 504 committee, however, determined that his

disability did not impair his ability to understand the impact and consequence of his bringing a gun to school. This determination cleared the way for the school district to discipline Willie as it would any non-disabled student. Therefore, he could be expelled in accordance with the school district's weapon policy. In light of these differing determinations, it is clear that Willie and Jacob did not engage in the same conduct without any mitigating circumstances that would distinguish the school district's treatment of them. Therefore, Jacob is not similarly situated to Willie and can not be used as a comparator to establish the Plaintiffs' prima facie case of race discrimination.

Even if the Plaintiffs could establish a prima facie case of discrimination, the result would be the same. The Defendants have produced a legitimate non-discriminatory reason for their alleged discriminatory conduct–the differing determinations by the boys' respective 504 committees. The school district could not expel Jacob Stockstill in accordance with its weapon policy in light of Jacob's 504 committee's determination that his behavior was a manifestation of his disability. Rather, his discipline had to comply with IDEA rules and regulations. The Plaintiffs have not shown that this legitimate non-discriminatory reason is not true and is merely a pretext for discrimination. Accordingly, the Plaintiffs' race discrimination claim under Title VI must fail as a matter of law.

*Plaintiffs' Equal Protection Claim*

The Plaintiffs also allege that the school district violated Willie's rights under the Equal Protection Clause of the Fourteenth Amendment[6] by treating him differently than a Caucasian

---

[6] The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o state shall ... deny to any person within its jurisdiction the equal protection of the laws."

student, Jacob Stockstill.  The purpose of the Fourteenth Amendment's equal protection clause "is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination."  *Miller v. Independent School Dist. No. 196,* 2008 WL 880177 *4 (D.Minn. March 28, 2008)(citing *Village of Willowbrook v. Olech,* 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060(2000)(quotations omitted)).  To establish a prima facie violation of the equal protection clause on the basis of discrimination, the Plaintiffs must offer facts and evidence that constitutes proof of racially discriminatory intent or purpose.  *Foster v. Wyrick,* 823 F.2d 218, 221 (8th Cir. 1987).  Thus, the Plaintiffs must show that Willie was treated differently from others who were similarly situated, and show the school district lacked a rational basis for its dissimilar treatment of him.  *Miller,* 2008 WL 880177 at *4.

As stated above, the Plaintiffs have failed to produce any evidence showing that Willie was treated differently than any similarly situated Caucasian student.[7]  In fact, the evidence shows that the school district consistently expelled all students (Hispanic, Caucasian and African American) who were found to be in violation of the school district's weapon policy.  Thus, the Plaintiffs' equal protection claim fails on this basis alone.

Furthermore, Plaintiffs have failed to show that the school district was without a rational basis for its treatment of Willie.  Here, the school district's discipline of both Willie and Jacob was controlled by the decisions of their respective 504 committees. Willie's 504 committee found that his behavior was not a manifestation of his disability.  Therefore, he could be disciplined as any non-disabled student who brought a weapon to school.  Jacob's 504

---

[7] Willie and Jacob are not similarly situated.  Jacob's behavior was found by his 504 committee to be a manifestation of his disability and Willie's was not.

committee, however, found that his behavior was a manifestation of his disability and he could not be disciplined as a non-disabled student. Jacob could not be expelled for his behavior while Willie could. There exists a rational basis for the district's dissimilar treatment of these two students. Thus, Plaintiffs' equal protection claim must fail.

In their response to the summary judgment motion, the Plaintiffs, for the first time, allege that the decisions of the two 504 committees was motivated by race because the racial makeup of the committees was all or mostly Caucasian. However, they have presented no evidence showing that the decision of either committee was affected by racial discriminatory intent. Plaintiffs' mere allegation is not enough to show racial animus or discriminatory motives on the part of these committees.

*Plaintiffs' §1981 Claim*

Plaintiffs also allege that the school district discriminated against Willie because of his race in violation of 42 U.S.C. §1981. The purpose of §1981 is to prohibit discrimination in the "performance, modification and termination of contracts" and to protect "the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship." 42 U.S.C. §1981(b). To establish a prima facie case of discrimination under this statute, the Plaintiffs must show that 1) Willie was a member of a racial minority; 2) the school district intended to discriminate against him on the basis of his race; and 3) the discrimination concerned a subject recited in §1981. *Williams v. Lindenwood University,* 288 F.2d 349, 355 (8th Cir. 2002). Willie, as an African American, is certainly a member of a protected class. But again, there is no evidence that the school intentionally discriminated against Willie because of his race when he was expelled for bringing a weapon to school. Therefore, Plaintiffs' §1981 claim must fail as a

matter of law.

## CONCLUSION

For the reasons discussed herein and above, the Court finds that the Defendants's Motion for Summary Judgment should be and hereby is **granted**.  A judgment of even date, consistent with this Opinion, will be issued.

IT IS SO ORDERED, this 1st day of July, 2008.

                                                /s/Harry F. Barnes
                                                Hon. Harry F. Barnes
                                                United States District Judge